UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LAURENCE ALLEN and MICHELLE ALLEN, as the co-administrators of the ESTATE OF JOHN BRADLEY ALLEN,

                      Plaintiffs,

v.

INDIVIOR INC. f/k/a RECKITT BENCKISER PHARMACEUTICALS, INC.; RECKITT BENCKISER HEALTHCARE (UK) LTD.; and INDIVIOR PLC f/k/a RECKITT BENCKISER GROUP PLC,

                      Defendants.

1:16-cv-01538 (BKS/CFH)

---

**APPEARANCES:**

*For Plaintiffs:*
The Kindlon Law Firm, PLLC
Lee C. Kindlon
74 Chapel Street
Albany, NY 12207

*For Defendants Indivior Inc. and Indivior PLC*
Jones Day
David B. Alden
Stephen J. Miller
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Chris J. Lopata
250 Vesey Street
New York, NY 10281

*For Defendant Reckitt Benckiser Healthcare (UK) Ltd.*
Bond, Schoeneck & King
Arthur J. Siegel
22 Corporate Woods Boulevard, Suite 501
Albany, NY 12211
Wilmer Cutler Pickering Hale and Dorr LLP
David P. Donovan
Justin M. Baxenberg

David S. Molot
1875 Pennsylvania Avenue, NW
Washington, DC 20006

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

Plaintiffs Laurence and Michelle Allen, as co-administrators of the estate of their deceased son John Bradley Allen ("Decedent"), bring this diversity action[1] against Defendants Indivior Inc., Indivior PLC, and Reckitt Benckiser Healthcare (UK) Ltd. ("RBH"),[2] alleging that their son had a "crippling addiction" to Defendants' prescription drug Suboxone and died of a heroin overdose in the late evening of January 31, 2014 to early morning of February 1, 2014, a few weeks after attempting to stop using the prescription drug. (Dkt. No. 1, ¶¶ 1–4, 17–23). Plaintiffs assert three claims under Connecticut products liability law: (i) negligence; (ii) strict liability; and (iii) failure to warn.[3] (*Id.* ¶¶ 24–50).

Defendant Indivior Inc. moves to: (1) dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the product liability claims are time-barred and any unfair trade practices claim is barred by the Connecticut Product Liability Act; or, in the

---

[1] Plaintiffs assert that the "Court has federal question and supplemental jurisdiction," (Dkt. No. 1, ¶ 5), but as they only bring state law claims, the only possible basis for subject-matter jurisdiction is diversity of citizenship. The Complaint's jurisdictional allegations are not crystal clear, but the record is sufficient to establish diversity. The allegations intimate, and Plaintiffs' counsel conceded at oral argument, that Decedent was a Connecticut citizen, (*see id.* ¶¶ 5, 20–21), which means that Plaintiffs are Connecticut citizens as well, since "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent," *see* 28 U.S.C. § 1332(c)(2). The Complaint alleges that Defendant Indivior Inc. is a citizen of Delaware and Virginia, (Dkt. No. 1, ¶ 7), and that Defendants Indivior PLC and RBH are citizens of a foreign state, (*id.* ¶¶ 8–9). Finally, the Court notes that the amount in controversy exceeds $75,000. (*See* Dkt. No. 1, ¶ 51).

[2] Plaintiffs allege that Indivior Inc. was formerly known as Reckitt Benckiser Pharmaceuticals, Inc., and Indivior PLC was formerly known as Reckitt Benckiser Group PLC. Additionally, the Complaint names MonoSol Rx, LLC as a fourth defendant, but on May 9, 2017, the Court entered the parties' stipulation of dismissal of the action as against MonoSol. (*See* Dkt. No. 40).

[3] Though paragraph 1 of the Complaint states the action is brought "under Connecticut's products liability and unfair trade practices statutes," (Dkt. No. 1, ¶ 1), the Complaint does not contain a separate count for unfair trade practices or any allegations concerning unfair trade practices.

2

alternative, (2) dismiss the Complaint under Rule 12(b)(3)[4] and 28 U.S.C. § 1406(a), or transfer the action to the District of Connecticut under 28 U.S.C. § 1406(a), because venue does not lie in the Northern District of New York. (Dkt. No. 28). Defendant Indivior PLC moves to dismiss or transfer on similar grounds, but also expressly moves under Rule 12(b)(2) for lack of personal jurisdiction and adds that dismissal is warranted under Rule 12(b)(6) because "Indivior PLC was created after all of the relevant events underlying this action." (Dkt. No. 29). Defendant RBH moves under Rule 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(3) for improper venue, and Rule 12(b)(6) on the ground that the claims are time-barred. (Dkt. No. 34). Further, RBH opposes transfer to the District of Connecticut. (*See* Dkt. No. 43). On that issue, although Indivior Inc. and Indivior PLC initially sought transfer in the alternative to dismissal, they argue in their reply briefs that transfer would be "futile." (Dkt. No. 41, at 5; *see* Dkt. No. 42, at 3). The Court held oral argument on Defendants' motions on August 8, 2018. For the reasons set forth below, the Court dismisses the Complaint under 28 U.S.C. § 1406(a) and Rules 12(b)(2)–(3).

## II.   FACTUAL BACKGROUND[5]

Decedent John Bradley Allen, born in 1994, was injured in a car accident in 2010. (Dkt. No. 1, ¶¶ 11, 12). Decedent was prescribed hydrocodone to manage his pain, and he eventually became dependent on this opioid-based medication. (*Id.* ¶¶ 12–13). Seeking to wean him off hydrocodone, Decedent's physician prescribed Suboxone, the brand name for the combination drug product (co-formulated buprenorphine hydrochloride and naloxone hydrochloride

---

[4] Indivior Inc. does not expressly mention Rule 12(b)(2) in its notice of motion, (*see* Dkt. No. 28), but its opening brief argues that "the complaint also should be dismissed with respect to Indivior Inc. under Fed. R. Civ. P. 12(b)(2) because . . . this Court lacks personal jurisdiction over Indivior Inc.," (Dkt. No. 28-3, at 23 n.10).

[5] The following allegations are taken from the Complaint. "In considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in the light most favorable to Plaintiff, and all doubts are to be resolved in Plaintiff's favor." *Minholz v. Lockheed Martin Corp.*, 227 F. Supp. 3d 249, 255 (N.D.N.Y. 2016). Similarly, on a Rule 12(b)(3) motion, "the facts must be viewed in the light most favorable to the plaintiff." *Universal Grading Serv. v. eBay, Inc.*, No. 08-cv-3557, 2009 WL 2029796, at *10, 2009 U.S. Dist. LEXIS 49841, at *36 (E.D.N.Y. June 10, 2009).

dehydrate) used in opioid replacement therapy for the treatment of opioid dependency. (*Id.* ¶¶ 1–3, 14). According to the Complaint, Defendants Indivior Inc. and Indivior PLC are "engaged in the development, manufacture and sale of pharmaceuticals, including Suboxone, and health care products and services throughout the United States," (*id.* ¶ 7; *see also id.* ¶ 9), whereas RBH is "engaged in the development and manufacture of pharmaceuticals, including Suboxone, and health care products and services made and sold subject to FDA approval," (*id.* ¶ 8).

When he began taking Suboxone in February 2012, Decedent was "a week shy of his eighteenth birthday." (*Id.* ¶¶ 14, 16). For the next twenty months and without interruption (i.e., until approximately October 2013), Decedent took a daily dose of at least two milligrams of Suboxone. (*Id.* ¶ 15). By "late 2013," Decedent "had become completely addicted" to Suboxone. (*Id.* ¶ 17). The Complaint alleges that "the Defendants were negligent in both their design and labeling of Suboxone and that, as a result, it caused crippling addiction to [Decedent] and, upon his prescribed supply ending, violent withdrawal symptoms." (*Id.* ¶ 4). In December 2013, Decedent tried to stop using the drug and "enrolled in an intensive in-patient program to help him through the withdrawals." (*Id.* ¶ 18). He took his last prescribed dose on December 27, 2013. (*Id.* ¶ 19).

After the 21-day treatment program, Decedent "went home to his family" in Connecticut. (*Id.* ¶ 20; *see id.* ¶ 5 (detailing that "the estate of Mr. Allen is and was located in the state of Connecticut")). On January 31, 2014, Decedent watched a movie with his family and then "went upstairs to his room." (*Id.* ¶ 21). There, he "ingested heroin" and "overdosed." (*Id.*). The "overdose killed him in the late evening to early morning hours of January 31, 2014 to February 1, 2014," (*id.* ¶ 4), "just a few weeks after his [Suboxone] prescription ran out," (*id.* ¶ 11). At the time of his death, Decedent was "a successful college student who was in the midst of an

investment banking internship at . . . a private equity advisement firm located in the State of New York." (*Id.* ¶ 22). But "[a]s a result of his suboxone addiction, Bradley Allen suffered through the pain of addiction, which eventually led to his debilitating withdrawals." (*Id.* ¶ 23). According to the Complaint, the "only way to treat those withdrawals was with heroin," and Decedent's "death from an overdose was a direct result of his addiction" to Suboxone. (*Id.*; *see id.* ¶ 11 (alleging that Decedent "turned to heroin" to "cope with the severe withdrawal" symptoms)).

## III. DISCUSSION

### A. Improper Venue and Lack of Personal Jurisdiction

A proper venue for a civil action is defined as:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). If the defendant is an artificial entity, the defendant is deemed to reside for venue purposes "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *See id.* § 1391(c)(2).

The Complaint alleges that "[e]ach Defendant transacts business or committed an illegal or tortious act in this district, or has an agent that can be found in this district," and that "the events and omissions giving rise to Plaintiff's claims occurred within this judicial district." (Dkt. No. 1, ¶ 6). This statement is conclusory and overly vague. Also, the Court notes that the statement does not specify a judicial district and, according to the docket, the "original complaint had the court location as District of Connecticut." (*See* Clerk's Correction of Docket Entry, Dec.

5

30, 2016). A few days later, the Clerk replaced the original complaint with a "corrected complaint," stating "the court location as Northern District of New York." (*Id.*). There is nothing in the record, however, explaining why Plaintiffs originally captioned the complaint as one filed in the District of Connecticut and then amended the complaint for filing in this district.[6]

The Complaint's only express reference to New York is the allegation that Decedent "was a successful college student who was in the midst of an investment banking internship at NYPPEX, a private equity advisement firm located in the State of New York." (Dkt. No. 1, ¶ 22).[7] Completely absent from the Complaint, however, are any nonconclusory allegations that Defendants reside in New York, that a substantial part of the events or omissions described took place in New York, or that Defendants are subject to this Court's personal jurisdiction.[8] Indeed, Plaintiffs concede that Defendants' "legal arguments on jurisdiction and venue are proper," and seek an order transferring this case to the District of Connecticut. (*See* Dkt. No. 38, at 7–8; Dkt. No. 39, at 7). Accordingly, the Court concludes that venue is not proper in this District and that, as Defendants have argued, this Court does not have personal jurisdiction over Defendants.

### B. Dismissal or Transfer Under 28 U.S.C. § 1406(a)

#### 1. Legal Standard

When a case lays venue in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). "Transfer is

---

[6] At oral argument, Plaintiffs' counsel offered no plausible basis for filing this case in the Northern District of New York.

[7] Defendant RBH notes that this allegation is irrelevant to venue and, in addition, is irrelevant to this district because the firm is located in the Southern District of New York. (Dkt. No. 34-8, at 21; Dkt. No. 34-7, at 2).

[8] Further, the vague and conclusory allegation that Indivior Inc. and Indivior PLC are engaged in activities "throughout the United States" is insufficient, without more, to subject them to personal jurisdiction in New York.

6

favored to remove procedural obstacles including the lack of personal jurisdiction."[9] *WorldCare Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341, 365 (D. Conn. 2011); *see also Minnette*, 997 F.2d at 1027 (noting that the "functional purpose of 28 U.S.C. § 1406(a) is to eliminate impediments to the timely disposition of cases and controversies on their merits"); *Corke v. Sameiet M.S. Song of Nor.*, 572 F.2d 77, 80 (2d Cir. 1978) (concluding that transfer was in the interest of justice where it "would apparently enable appellant to obtain personal jurisdiction over some or all of the defendants").

"A 'compelling reason' for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005) (quoting *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)). However, courts should refrain from transferring a case "when that case is a 'sure loser.'" *Gonzalez v. Hasty*, 651 F.3d 318, 324 (2d Cir. 2011) (quoting *Moreno-Bravo v. Gonzales*, 463 F.3d 253, 263 (2d Cir.2006); *accord Daniel*, 428 F.3d at 436 (noting that if a "case is a sure loser in the court that has jurisdiction (in the conventional sense) over it, then the court in which it is initially filed—the court that does not have jurisdiction—should dismiss the case rather than waste the time of another court" (quoting *Phillips*, 173 F.3d at 611)). As Judge Posner explained in *Phillips*, "there is no reason to raise false hopes and waste judicial resources by transferring a case that is clearly doomed, for example because the statute of limitations had already run when the case was initially filed." 173 F.3d at 610. Hence, for the purpose of

---

[9] A court may transfer a case under § 1406(a) even if the court does not have personal jurisdiction over the defendant. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."); *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000) (observing that the Supreme Court has "made clear that a district court lacking both personal jurisdiction and proper venue could transfer under section 1406(a) to a district where both defects were avoided").

7

deciding whether transfer is in the interest of justice under § 1406, this Court will examine whether the action was timely at the commencement of the case.[10]

### 2. Timeliness

#### a. Choice of Law

When sitting in diversity, this Court uses the choice-of-law rules of New York, the state in which it sits, to determine the applicable rules of decision. *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016) ("In a diversity case . . . the choice-of-law rules of New York, the forum state, govern."). But in the present posture under § 1406, the Court is not resolving the case on the merits; instead, the question is whether the case is a "sure loser" that warrants dismissal rather than transfer because Plaintiffs' claims were already time-barred at the commencement of the action, even assuming that the case was laid in a proper venue. In other words, for purposes of the § 1406 analysis, this Court adopts the perspective of a would-be transferee court in the District of Connecticut.[11] As this Court does not have personal jurisdiction over Defendants and this District is the wrong venue, the would-be transferee court in the District of Connecticut would apply the law of its forum state, Connecticut. *See Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010) ("If a district court receives a case pursuant to a transfer under 28 U.S.C. § 1406(a), . . . it logically applies the law of the state in which it sits, since the original venue, with its governing laws, was never a proper option."); *Schaeffer v. Village of Ossining*, 58 F.3d 48, 50 (2d Cir. 1995) (transferee laws apply after transfer under § 1406(a)).

---

[10] Defendant RBH also argues that Plaintiffs' decision to file their action in this district was "inexplicable," and that the interests of justice weigh against a transfer "due to the plaintiff's 'lack of diligence in choosing a proper forum.'" (Dkt. No. 43, at 6, 7 (quoting *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992))). The Court notes that, in their briefs and at oral argument, Plaintiffs provided no plausible explanation for filing their action in this forum; accordingly, the Court agrees that these circumstances evince a lack of diligence on Plaintiffs' part.

[11] The Court assumes, without deciding, that the District of Connecticut would be a proper venue.

"Under Connecticut law, . . . Connecticut's own statutes of limitations will usually govern claims asserted in federal diversity cases in Connecticut." *Slekis v. Nat'l R.R. Passenger Corp.*, 56 F. Supp. 2d 202, 204 (D. Conn. 1999). In this case, all the parties agree that Connecticut's statute of limitations applies. In their opposition briefs, Plaintiffs "concede[] that the Statute of Limitations guidelines as established by Connecticut law are applicable in this case," (Dkt. No. 38, at 6; Dkt. No. 39, at 6),[12] and Defendants agree that Connecticut's statute of limitations apply.[13] This shared premise is "sufficient to establish the applicable choice of law." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001). Therefore, the Court will examine whether this action was timely commenced under Connecticut's statute of limitations.

### b. Connecticut's Statute of Limitations

Plaintiffs bring three claims—negligence, strict liability, and failure to warn—under "Connecticut's products liability . . . statute[]."[14] (*See* Dkt. No. 1, ¶¶ 1, 24–50). The statute permits products liability claims based on all three theories. *See* Conn. Gen. Stat. § 52-572m(b).

---

[12] The Complaint itself asserts that the case is brought under Connecticut law. (*See* Dkt No. 1, ¶ 1).

[13] Defendants arrive at this conclusion by employing New York's choice-of-law rules. (*See* Dkt. No. 28-3, at 12–16; Dkt. No. 29-3, at 13; Dkt. No. 34-8, at 14–15). As discussed above, the choice-of-law rules of Connecticut, not New York, govern for § 1406 purposes. Nevertheless, the Court agrees with Defendants that, even under New York's choice-of-law rules, the statute-of-limitations analysis would require consideration of Connecticut's statute of limitations because neither Decedent nor Plaintiffs are alleged to be residents of New York and the Complaint contains no allegations that the claimed injury occurred outside Connecticut. *See* N.Y. C.P.L.R. 202 (providing, in relevant part, that nonresident plaintiffs must bring claims accruing in another state within the limitations period set by the law of either New York or the state where the claim accrued, whichever is shorter); *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999) (stating that, to determine whether a tort claim accrues in another state for purposes of section 202 of the New York Civil Practice Law and Rules ("CPLR"), New York courts employ "the traditional definition of accrual—a cause of action accrues . . . in the place of the injury"). Further, CPLR 202 imports "the *entire* foreign statute of limitations . . . not merely its [limitations] period." *Norex Petroleum Ltd. v. Blavatnik*, 23 N.Y.3d 665, 676 (2014) (quoting Joseph M. McLaughlin, *Practice Commentaries*, McKinney's Cons. Laws of N.Y., Book 7B, N.Y. C.P.L.R. 202, C202:3 (1990)). Therefore, under CPLR 202, the Court would need to consider Connecticut's rules relating to limitations periods as well as Connecticut's rules relating to dates of accrual and interposition of a claim. *See Silva v. Toll Brother's Inc.*, No. 97-cv-741, 1998 WL 898307, at *2, 1998 U.S. Dist. LEXIS 19894, at *7 (S.D.N.Y. Dec. 23, 1998) (borrowing Connecticut's "actual service" rule to determine the date of interposition of a claim accruing in Connecticut). In sum, whichever state's choice-of-law rules apply, Plaintiffs' claims must, at a minimum, be timely under Connecticut's statute of limitations.

[14] Plaintiffs acknowledge that they have only brought claims for negligence and strict liability but appear to assert, without any support, that these may be brought under Connecticut's unfair trade practices law. (Dkt. No. 38, at 7; *see* Dkt. No. 1, ¶ 1 (Complaint asserting action seeks relief under Connecticut's "unfair trade practices statute[]")).

The Connecticut statute of limitations for products liability claims provides a limitations period of "three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered." *Id.* § 57-577a(a). Under Connecticut's survival statute, an injured person's claims do not abate upon his death. *See id.* § 52-599(a) ("A cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person."); *see also Marinella v. Town of Darien*, No. 07-cv-910, 2010 WL 3123298, at *6, 2010 U.S. Dist. LEXIS 81129, at *17 (D. Conn. Aug. 9, 2010) (stating that "the individual need not be alive at the time the action is commenced under the Connecticut [survival] statute"). But the representatives of a deceased person may bring survival claims only if "the time limited for the commencement of any personal action . . . has not elapsed at the time of the person's death." Conn. Gen. Stat. § 52-594. "The executor or administrator has all the time which the decedent, if living, would have within which to bring the action; but, if less than a year remained to the decedent, his representative has a full year." *Fenton v. United Techs. Corp.*, 204 F. Supp. 2d 367, 374 (D. Conn. 2002) (quoting *Leahy v. Cheney*, 98 A. 132, 133 (Conn. 1916) (interpreting the predecessor statute of section 52-594)); Conn. Gen. Stat. § 52-594 (providing that, with respect to claims that had not expired by the time of the decedent's death, "one year from the date of death shall be allowed to his executor or administrator to institute an action therefor"). Accordingly, the limitations period for Plaintiffs' claims is three years from the date of Decedent's injury, and if the period lapses within a year of his death, the period is extended until one year after his death.

---

The Connecticut Products Liability Act, however, provides "the exclusive remedy for a party who seeks recompense for those injuries caused by a product defect." *Hurley v. Heart Physicians, P.C.*, 898 A.2d 777, 789 (Conn. 2006); *see* Conn. Gen. Stat. § 52-572n(a) (providing that a "product liability claim . . . may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product").

10

With respect to the time of accrual, the Connecticut statute of limitations for products liability claims uses "the date when the injury . . . is first sustained or discovered or in the exercise of reasonable care should have been discovered." Conn. Gen. Stat. § 57-577a(a). The "precise reason for the injury need not be discovered before the statute begins to run." *Durrett v. Leading Edge Prod., Inc.*, 965 F. Supp. 280, 284 (D. Conn. 1997) (expounding upon the holding in *Beckenstein v. Potter & Carrier, Inc.*, 464 A.2d 18, 25 (1983)). Nevertheless, a products liability claim does not accrue until the plaintiff "discovers or should discover, through the exercise or reasonable care, that he or she has been injured *and* that the defendant's conduct caused such injury." *Gnazzo v. G.D. Searle & Co.*, 973 F.2d 136, 138 (2d Cir. 1992) (emphasis added) (quoting *Champagne v. Raybestos-Manhattan, Inc.*, 562 A.2d 1100, 1107 (1989)); *see also Laczek v. Boehringer Ingelheim Pharm., Inc.*, No. CPL-HHD-CV16-6069413-S, 2017 WL 5164665, at *4, 2017 Conn. Super. LEXIS 4567, at *10–11 (Conn. Super. Ct. Oct. 2, 2017) (applying the Connecticut Supreme Court's interpretation of identical language in another statute, and holding that the limitations period in section 52-577a(a) begins to run when the plaintiff has "knowledge of facts (1) that would put a reasonable person on notice of the nature and extent of an injury, and (2) that the injury was caused by the conduct of another").

Having identified the applicable limitations period and the rules governing accrual, the Court must address one remaining issue—Connecticut's treatment of when a claim is deemed to be interposed for statute-of-limitations purposes. The general New York rule, as well as the general rule used by federal courts in federal question cases,[15] is that a claim is interposed when

---

[15] Because state law, not federal law, controls the statute-of-limitations analysis in diversity cases, Rule 3 of the Federal Rules of Civil Procedure does not determine when the claim is deemed to be interposed in such cases. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980) ("Rule 3 governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations."); *id.* at 752–53 (holding that "state service requirements which are an integral part of the state statute of limitations should control in an action based on state law which is filed in federal court under diversity jurisdiction"); *Converse v. Gen. Motors*

11

the action is filed. *See* N.Y. C.P.L.R. § 203(c) (providing that, in an action commenced by filing, "a claim asserted in the complaint is interposed against the defendant" upon filing); *Henderson v. United States*, 517 U.S. 654, 657 n.2 (1996) ("In a suit on a right created by federal law, filing a complaint suffices to satisfy the statute of limitations."). By contrast, "the Connecticut Supreme Court has long adhered to the rule that only actual service upon the defendant will satisfy the state statutes of limitations." *Converse*, 893 F.2d at 515. The actual service rule likewise applies to claims brought under the Connecticut Product Liability Act. *Id.*

c. **Application**

All three Defendants assert that Plaintiffs' claims are time-barred under Connecticut law. Indivior Inc. and Indivior PLC point out that Plaintiffs served the summons and complaint on Indivior Inc. on February 2, 2017 and Indivior PLC "later in February 2017"; they reason that the claims are untimely because the action was commenced under Connecticut law "over three years after [Decedent] died." (*See* Dkt. No. 28-3, at 16; Dkt. No. 29-3, at 13). Implicit in this argument is that the date of Decedent's death is the latest time that the claims could have accrued. Nevertheless, Indivior Inc. and Indivior PLC further clarify that their position is that the claims accrued at some point before but not later than December 2013. (Dkt. No. 28-3, at 17–19). In support of this position, they reference the Complaint's allegations that the injury at issue was Decedent's addiction to Suboxone, that he took a daily dose of Suboxone from February 2012 to October 2013, that he had become "completely addicted" to Suboxone by "late 2013," and that he enrolled in December 2013 in "an intensive in-patient program to help him through the withdrawals." (*Id.* at 8, 18–19 (quoting Dkt. No. 1, ¶¶ 14–18)). They conclude that Decedent "knew or should have known of his injury—his supposed Suboxone addiction—more than three

---

*Corp.*, 893 F.2d 513, 516 (2d Cir. 1990) (applying Connecticut's actual service rule, rather than Rule 3, to determine when a claim is interposed for statute-of-limitations purposes in a diversity case).

years before this action was filed on December 27, 2016." (*Id.* at 8). RBH advances similar arguments, and notes that "service of process on RBH UK did not occur until February 15, 2017." (Dkt. No. 34-8, at 16; *see id.* 16–19).

In their four-page oppositions to Indivior Inc.'s and RBH's motions,[16] Plaintiffs assert that "the triggering event was the death of J. Bradley Allen which occurred on or about January 31, 2014." (Dkt. No. 38, at 6). They indicate that "Plaintiff Laurence Allen emailed the CEO of Indivior Inc. with a copy of the filed complaint and asked to begin settlement negotiations" on January 31, 2017. (*Id.* at 7). Without citing any supporting authorities, Plaintiffs assert that "[t]his provides, at the very least, constructive notice to the Defendant Invidior [sic] Inc. that the lawsuit had been filed." (*Id.*). Finally, Plaintiffs add factual allegations that are absent from the Complaint: "[T]he cause of death was not determined until the autopsy report was issued on or about March 13, 2014 and even then, when the toxicology reports were returned on or about April 16, 2014. That is, the cause of the harm was not discovered until mid-April 2014." (*Id.*).

Plaintiffs' response fails to respond to Defendants' arguments and address the applicable law. First, Plaintiffs appear to adopt January 31, 2014 as the accrual date (the "triggering event") for their claims, but then reference two subsequent dates to suggest that Plaintiffs discovered the "cause of the harm" in "mid-April 2014." (*Id.*). They never explain the significance of those later dates, and they fail to respond to Defendants' position that the injury alleged was the addiction to Suboxone and that Decedent knew or should have known about this injury at the latest by December 2013. Indeed, the gravamen of the Complaint is that Defendants negligently designed and labeled the drug Suboxone, which caused Decedent's "crippling addiction." (Dkt. No. 1, ¶ 4). It is clear from the Complaint that Decedent knew that he was addicted to Suboxone by

---

[16] Plaintiffs did not file a response to Indivior PLC's motion.

13

December 2013, when he started an addiction treatment program. Further, although Plaintiffs allege that Decedent took heroin to "treat" or "cope with" the withdrawal symptoms he experienced after discontinuing Suboxone and that he died from a heroin overdose, the Complaint expressly states that these actions were the "result of his suboxone addiction." (*Id.* ¶¶ 4, 23). Neither Decedent's death nor the subsequent determination that his death was caused by a heroin overdose overrides the factual allegation that Decedent suffered, and knew he suffered, an addiction to Suboxone by the time he enrolled in the treatment program. Drawing all reasonable inferences in Plaintiff's favor, therefore, the Court finds that Plaintiffs' claims accrued at the latest on December 27, 2013, the date Decedent took his last prescribed dose of Suboxone. (*See id.* ¶¶ 18–19).

Given that Plaintiffs' claims have a three-year limitations period, and that there remained more than one year on the limitation period when Decedent died at the end of January 2014, under Connecticut law, Plaintiffs, as the representatives of Decedent's estate, had to commence this action by serving Defendants at the latest on December 27, 2016. Plaintiffs' affidavits of service, however, show that Indivior Inc. was served on February 2, 2017, and that Indivior PLC and RBH were served on February 15, 2017.[17] (*See* Dkt. Nos. 4, 6, 7). Plainly, Plaintiffs

---

[17] At oral argument, Plaintiffs argued that section 52-593a(a) of the General Statutes of Connecticut extended the time for service by 30 days. That section provides that a claim is not time-barred "if the process to be served is personally delivered to a state marshal, constable or other proper officer within [the limitations period] and the process is served, as provided by law, within thirty days of the delivery." Conn. Gen. Stat. § 52-593a(a); *see also Doe v. Town of Hartford*, 177 A.3d 1128, 1132 (Conn. 2018) (explaining that section 52-593a is a "remedial savings statute that operates to render an action timely commenced as long as process is delivered to a marshal prior to the expiration of the applicable statute of limitations and served within thirty days"). Even assuming that Plaintiffs' process servers were "proper officer[s]" under section 52-593a, Plaintiffs did not present any evidence that process was personally delivered to their process servers before the expiration of the limitations period. The affidavits of service filed in this case merely show that a private process server served process on Indivior Inc. in New York on February 2, 2017, (*see* Dkt. No. 4), and a private process server served process on Indivior PLC and RBH in England on February 15, 2017, (*see* Dkt. Nos. 6, 7). In these circumstances, the Court finds that section 52-593a does not save Plaintiffs' claims. *See Johnson v. Preleski*, 166 A.3d 783, 791 (Conn. App. Ct. 2017) ("As this court has observed, '[a] plaintiff relying upon a "saving statute" must demonstrate compliance with its provisions.' Because we conclude that the petitioner failed to demonstrate that process, *in any form*, was personally delivered to

commenced this action too late. Moreover, this conclusion holds even if the Court were to make the (unwarranted) assumption that the date of Decedent's death is the date of accrual: Plaintiffs had still not served any Defendant by January 31 or February 1, 2017. As for the email purportedly sent to Indivior Inc. on January 31, 2017, Plaintiffs have not cited any authority for the proposition that emailing a complaint constitutes service under Connecticut law.

The discussion above indicates that Plaintiffs' claims are time-barred and that this action is a "sure loser." Therefore, it is not in the interest of justice to transfer the case to the District of Connecticut. *Gonzalez*, 651 F.3d at 324. Accordingly, Plaintiff's claims are dismissed under § 1406(a).[18]

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motions (Dkt. Nos. 28, 29, 34) are **GRANTED in part** in accordance with this Memorandum-Decision and Order, and otherwise **DENIED**; and it is further

**ORDERED** that the Complaint is **DISMISSED** in its entirety under 28 U.S.C. § 1406(a) and Rules 12(b)(2)–(3).

**IT IS SO ORDERED.**

Dated: August 9, 2018
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

a state marshal within the limitation period, we conclude that the petitioner is unable to avail himself of the relief afforded by § 52-593a." (alteration in original) (citation omitted)).

[18] In light of this ruling, the Court need not consider Defendants' motions to dismiss under Rule 12(b)(6) or RBH's arguments concerning lack of personal jurisdiction in Connecticut.